**Cliff SLAGLE, Relator,**

v.

**Ron KESSLER, Respondent.**

No. 22274.

Court of Civil Appeals of Texas, Dallas.

April 25, 1978.

Ronald A. Dubner, Dubner, Weinstein & Bell, Dallas, for relator.

F. Michael Prince, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for respondent.

AKIN, Justice.

Relator, a Democratic precinct chairman of Dallas County, has asked leave under Tex.R.Civ.P. 383 to file a writ of mandamus pursuant to Tex.Rev.Civ.Stat.Ann. Art. 1735a (Vernon Supp.1978) against Ron Kessler, Dallas County Democratic Party Chairman. Relator seeks to compel Kessler to call a meeting of the Dallas County Democratic Executive Committee to obtain approval of the committee for monies spent from the primary fund and other funds. We deny leave to file because we lack jurisdiction under art. 1735a.

Relator Slagle predicates his motion for leave to file his petition for a writ of mandamus on the ground that art. 13.43b(5)[1] of the Texas Election Code provides that mandamus will lie to enforce the rules of the Democratic Party. Relator in his petition for mandamus alleges that respondent during his tenure as chairman has collected monies, both privately and from the State, and has made expenditures of "primary funds"[2] and general revenues of the executive committee without obtaining approval of fifty-one percent of the committee, citing art. 3, sec. B(7) of the rules of the Democratic Party. Thus, the petition raises two questions concerning the alleged duties of the county chairman, one with respect to the funds for holding the primary, and the other with respect to other funds collected by the chairman.

With respect to funds other than primary funds, we have no jurisdiction to grant mandamus because any duty he may have with respect to these funds is not a duty "in connection with" the holding of the primary election. Our jurisdiction under art. 1735a to grant mandamus against party officers is clearly limited by law to a duty "in connection with the holding of any general election." *Oney v. Ammerman*, 458 S.W.2d 54 (Tex.1970).

1. All references are to the Tex.Election Code Ann. (Vernon 1967) unless otherwise specified.

2. Primary funds are defined in art. 13.18(5) of the Texas Election Code (Vernon Supp.1978).

With respect to the primary funds, a different question is presented because these obviously are funds specifically to be used for the conduct of the primary elections. Relator, in support of his petition for mandamus, points to art. 13.08a(d) which provides that "expenses properly incurred by or on behalf of the county executive committee for the conduct of the primary elections shall be paid from the primary fund, *in the manner authorized by the committee.*" [Emphasis added] He argues that although the county chairman may be responsible for the payment of the primary election expenses under art. 13.08a(e), this responsibility comes only after authorization by the executive committee. In this respect, he reasons that since art. 13.43b(5), pertaining to party rules, states that "rules as filed with the Secretary of State shall govern the conduct of . . . meetings of the executive committee," and since art. 3, sec. B(7) of the party rules provides that "expenditures of funds by the county executive committee, *unless otherwise specified by law,* shall require the approval of at least fifty-one percent (51%) of the members of said committee," [emphasis ours] it follows that the chairman has a duty to call a meeting of the executive committee in advance of the primary election in order to obtain approval by the committee of the manner in which he proposed to spend the primary funds in holding the election, and that this court has jurisdiction to compel the performance of that duty under art. 13.43b(5). We cannot agree.

■ The question is whether the Democratic Party rule requiring approval by 51% of the executive committee imposes a duty on the county chairman "in connection with the holding of an election." We hold that it does not because the Secretary of State of Texas, not the county executive committee, has authority to approve or disapprove all primary election expenses. Article 13.08a provides that each county chairman shall submit to the secretary of state at least thirty days prior to the primary election a sworn statement of all filing fees and contributions received and an itemized estimate of the cost of holding the primary. This section then provides:

The secretary of state shall review the estimate and shall *notify the chairman* of any items which he has disallowed as unauthorized or excessive expenditures. Expenditures may be allowed only for those purposes which are properly payable out of the primary fund under existing law as established by the statutes, court decisions, and administrative rulings of this state. *Any other provision of this code notwithstanding, the secretary of state shall pay for expenditures which in his discretion, are reasonably necessary for the proper conduct and supervision of the primary elections under the provisions of this code.* [emphasis added]

Since the payment and the amount of expenditures necessary for holding a primary election are within the authority of the secretary of state, we conclude that neither the code nor the party rules impose a duty on the county chairman to obtain a vote of fifty-one percent of the executive committee to approve these expenditures. This is true since the provision of the party rules, relied upon by relator, contains the proviso "unless otherwise prescribed by law" and the legislature has "otherwise prescribed by law" the precise and detailed method for providing adequate funds for holding primary elections. In so doing, the Legislature has placed this responsibility upon the secretary of state rather than the county executive committee.

To hold as relator would have us do would permit a majority of the executive committee to frustrate the legislative intent to provide adequate funds for holding primary elections. If the view advanced by relator were law, fifty-one percent of the executive committee could prevent, at least for all practical purposes, a primary election by refusing, for whatever reason, to approve expenditures. Indeed, the same would be true if less than fifty-one percent of the committee attended a meeting to approve expenditures of the primary fund. To ascribe such an intent to the Legislature would be absurd. We hold, therefore, that

whatever duty the county chairman has to seek authorization by the executive committee before spending party funds, that duty is not one "in connection with the holding" of the primary election. Accordingly, we have no jurisdiction under art. 1735a.

If the majority of the executive committee desires an accounting from the county chairman of expenditures made by him out of the primary fund and other funds, they may seek relief in a court of proper jurisdiction.

Motion denied.